Good morning. May it please the Court, my name is Christina Hellman, representing Appellant Shane Sopher. In 1999, the Oregon Board of Parole determined that Mr. Sopher, who was a juvenile at the time he committed his crime, would have to serve 400 months in prison before being eligible for parole consideration. For the last 10 years, Mr. Sopher has tried to have the Oregon courts hear the merits of his claims, that the rules which resulted in that lengthy prison term violate the state statutes as well as state and federal constitutions. In each response... Let me make sure I understand. So he is sentenced by the court to life? Life, correct, Your Honor. And under Oregon law, a juvenile must be parole eligible. So his sentence must be life in prison with the possibility of parole. Correct. And what happens then is a question of what the parole board does. Judges are out of it. It's a decision by the parole board. That's correct. And they decide based on what? That there are 400 months minimum. These are the regulations that they passed? That's correct. So actually what defendants did was not function as a parole board sitting in an adjudicatory capacity. What defendants did was pre-judge and pre-determine his case and then decide that he should get 400 months. You don't have to go there, do you? You don't have to say the pre-judge. You can just say that he acted legislatively. I'm just trying to understand your argument. If that's not the argument you're making, you can walk away from it. But you're complaining about the application, what they did specifically in your client's case. You're also complaining about the regulations which were adopted after your client was convicted? Correct, both, Your Honor. We are challenging the process by which the rules were enacted. And we are challenging then the flawed application that resulted from that. Now you agree that insofar as you're challenging their action with respect to your client's case, the actual denial of parole, that's barred by the 96th Amendment, right? Don't say yes if you don't mean it. I'm just trying to get your position on this. Your Honor, are you asking whether the claim is barred by the 1996th Amendment regarding immunity? Yes. Is our position that none of the actions that defendants took are covered by immunity because they are not within the scope of any sort of quasi-judicial action? You don't think the parole board is a quasi-judicial body for purposes of the 96th Amendment? I absolutely think that defendants acting as a parole board, so a neutral and detached body taking evidence, considering a parole date under rules and regulations that have already been established, are absolutely governed by immunity. But that's not what happened in this case. Defendants didn't sit and consider his parole as they would in a normal course. They had already prejudged what was going to happen. Well, let's apply that to a court. I mean, let's say it's a court and you think the judge has prejudged your case. That's still a judge and still a court. You may have a beef with the methods the judge used or the conclusions the judge used in reaching a decision, but you wouldn't say that's not a judge and you wouldn't say that's not a court because the judge walks in having prejudged the case. I'm just having difficulty understanding how, if they are a, if a parole board normally is a quasi-judicial body for purposes of the 96th Amendment, how this changes because you think they mishandled your client's case. There are two separate functions that defendants performed, Your Honor, if you want to think about it that way. One would be challenges to the process and one would be this actual implementation of the prisoner. Exactly. And that's where we started. Correct. And I said you've got the passage of the Act of Passive Regulations, which you want to call prejudging, and I suggest it may be better fit under the idea that they're legislators. Whatever, we can talk about that. But then I said as regards to their actual ruling in your client's case, the actual action in denying parole in your client's case, that's judicial, isn't it? It would be in the normal course, Your Honor, but this is more than just a judge, to take your example, a judge having thought about the case already deciding before he or she comes on the bench because they have taken additional steps. It's as though this is akin to a judge making up some type of law that would allow them to reach their predetermined result. That's what happened in this case. The board members didn't... So it's as if you had two cases and decided one, hoping to set a precedent to decide in a second case. Something... To use in a second case. Now, we do that all the time, but we'll have the same issue raised in a number of cases, and we'll sometimes have a lead case on the sides of different panels, and what we say... I mean, this is court procedure. I'm just telling you what we'll say as well. We will be bound by whatever the most senior panel in the panel has the case first submitted. So all of us will sit on the other cases while the first panel decides the issue. Are you telling me that that is not judicial conduct? Absolutely not, Your Honor. But that is not... It's not judicial conduct? I'm sorry. You're correct. What I am saying, though, is that in a situation where you target one individual and you make a determination specifically targeted towards them, that's not judicial. That's what happened in this case. A determination of an issue in one case that then is precedential against other cases is absolutely an exercise of judicial discretion. You're considering facts. You're looking at circumstances. You're making a rule of law that may affect other people who will bring those same claims. But you don't sit and think, I know that Bill Smith will come five months down the road, and I know that this will negatively impact him, and this is why I'm making this decision. Well, wouldn't a better analogy be that if the judge took off his or her judicial robes and went down to the state legislature and lobbied them to get a piece of legislation to take care of Bill Smith's case? True. I thought that's the distinction you were drawing. That is the much better analogy. Can I ask you about the... It's always good to say that to the judge. The district court dismissed under Younger, as I understand it. Yes. Why isn't Younger abstention appropriate in this case? There is a state proceeding, isn't it, where this argument that you're now making is before the state courts? There is a state mandamus case pending, yes. Does it raise the same issues as this case? It raises similar issues, yes. Younger abstention, however, is only appropriate when a plaintiff has the opportunity to raise and have timely decided the merits of the claims. And the state court in this case, in the trial court level, specifically ruled that these claims that are similar to the ones in the federal court were barred, that mandamus was not the appropriate remedy. The court was not able to consider these claims. I thought the state has taken a different position before the state court of appeal. They have. That the state courts can reach these constitutional claims in the mandamus proceeding. That is correct, Your Honor. My position is that at the time when the district court decided there was a procedural ruling in place, under this Court's precedent, a procedural bar does not provide the opportunity required under Younger. However, notwithstanding the recent concession by the state that the claims now may be heard, I think you have to consider that concession in light of three facts. The effect of the concession, the timing issues, and also the scope of the concession. And as you're analyzing that, would it make a difference if the district court had stayed the action pending the outcome as opposed to dismissing it so that the state court proceeding could go forward? And if it didn't, if it turned out that you actually weren't able to raise the issue due to process issues, you could then go back to the district court? Yes, Your Honor. We had asked for that at a minimum. If the underlying assumption, the ability to appeal a procedural ruling sufficed for Younger, we requested the district court to stay under its own jurisdiction. That was rejected. The case was simply dismissed. But I would like to return to this question of to think about the concession. So the effect of the concession under Oregon law is not dispositive, as I cited in the reply brief. The Oregon courts still maintain and insist upon making the final decision. So after 10 years, we still don't know whether the Oregon courts will ever consider the merits of these claims. I think the concession also has to be considered in terms of timing when it was conceded. Once again now, defendants have taken a position that would allow this federal court to dismiss the case, and only after we filed our opening brief decided to concede. And I would also direct the court to the scope of the concession. In Respondent's brief attachment, page 35, note 19, they specifically explain that they reserve the right to raise any other defenses on remand. As I read that footnote, Your Honors, that definitely includes other procedural defenses that were not the subject currently of the discretion issue that was raised before. So in light of all of that, in light of the fact that Younger is at its core based on comedy, not only does Mr. Silver not have the opportunity in the state courts, but this is a case that presents exceptional circumstances. Which of these cases was filed first? Which of the cases was filed first? The federal district, the 1983 case or the mandamus petition? The 1983 case was filed first. It was dismissed on sui spontan statute of limitations grounds, and thereafter is when he's filed the mandamus in another attempt to find a forum to litigate these important claims. I see that I have about three minutes, and if there are no questions, I'd like to reserve the time. Thank you. Okay, thank you. We'll hear from the State. May it please the Court and Counsel, Jeremy Rice from the Oregon Department of Justice on behalf of the defendants, members and former members of the Oregon Board of Parole and Post-Prison Supervision. Can you point that mic towards your lips? Raise it up a little bit? Yeah, sort of move the head up so it's pointing towards where you're talking. Slightly taller than this helmet, I apologize. We won't hold that against you. Slightly taller than most people who stand at most podiums, I think. It must be a constant issue for you. I move microphones often. It's okay. I understand plaintiffs to raise three claims in this 1983 suit based on equal protection, ex post facto and due process violations, alleged violations of each of those provisions. If the Court will permit, I'd like to discuss them in slightly sort of reverse order from the way I discussed them in the brief because I think it will make a little bit more sense and help with a little bit of the background of what this case is and how we got here, I guess. A little bit of background just for the Court's information and convenience. This case is one or plaintiff is one of five offenders who fall into a particular group of people who committed the crime of aggravated murder while juveniles between the years of 1989 and 1995. During those years, Oregon law had essentially a glitch in the statutory scheme where there was an inconsistency in how a juvenile convicted of that crime should be sentenced. On one hand, the sentencing structure commanded that they receive a mandatory minimum sentence. On the other, another statute said that juveniles cannot receive a mandatory minimum sentence. So after bouncing around in the Oregon courts for a little while, the courts determined that these offenders would receive essentially indeterminate life sentences, and that is what's already been discussed a little bit. These are life sentences with the eventual possibility of parole, which then puts parole release and its eventual possibility into the parole board's hands. Because that outcome, that sentence, really hadn't been anticipated by the board, the board did not have any administrative rules set up for setting a parole release date in those circumstances. That is, no rules applicable to this particular crime with this particular sentence because there weren't any other inmates or offenders who had been, who had received that particular sentence for that particular crime. So in the sort of mid to late 1990s, the board began engaging in the process of enacting some rules, adopting some rules, and those rules are known colloquially as the JAM rules, the Juvenile Aggravated Murder Rules, and you'll see that referred to a number of times throughout the briefing. And you would agree, wouldn't you, that when they adopted those rules that they were acting in the legislative capacity? That's their rulemaking function, yes. So the board has a rulemaking function. They have authority from the state legislature to adopt rules. They don't have immunity for that function under the 96th Amendment. No. To the extent that, yeah, the answer, the simple answer is yes, that the 1996. . . The class is always, always. . . Yes or no. So the simple answer is yes. Unfortunately, I'm not sure I understand your question. Yes, they have no immunity, or no, they have yes immunity, or. . . I'll have to rephrase to make it more simple. He said yes. Usually it's the fault of the form of the question. That's why we object to. . . So I'll start over and give what I hope is a simple answer. Well, I just want to make sure. I think you agreed with what I said.  And I just want to make sure that since you, it was a yes answer. And, well. . . I believe we're on the same page. The official just said, right. I asked the question backwards. You agree, or we agree, that they don't have immunity. They do not have immunity for the legislative. For the rulemaking function. Rulemaking function. The 1996 amendments to Section 1983 apply to judicial functions. Applies to a judicial officer. A judicial officer acting in a judicial function. Are these, are the members of the parole board, when they're actually applying the rules to a particular situation, are they a judicial officer? If I understand your question correctly, I believe there are really two questions posed by the 1996 amendments. First is whether a parole board member is a judicial officer, generally speaking, or can be deemed a judicial officer, depending on what function they're operating in. And the second question would be whether this case involves a judicial function or whether it involves some sort of legislative function. So the first question is whether a parole board member can be viewed as a judicial officer under the 1996 amendments. And the answer to that question is yes. As we've cited in the briefing, every federal court to have addressed that question is answered in the affirmative. But parole board officers or other similar, I guess every state has different ways of organizing these things. But the parole board officers and other similar state actors who are not judges, per se, but operate in a sort of judicial status with regard to their interactions with the people who operate before them, who appear before them. Let's get into that. I don't think you need to go into much more detail as to that. So insofar as they apply, they make a decision in a petitioner's case, you claim you believe they are in fact covered. Yes. By the immunity. Yes. So the second part of the 1996 amendment is that it applies to actors or state actors when they are operating or acting in a judicial function, when they participate in some judicial function. And that's sort of applying a set of rules or policies to a specific case. I think the core judicial functions are applying the law to facts, rendering a decision about an individual, you know, rendering a decision about an individual person and how the law will apply to them. I understand Ms. Hellman's argument. She doesn't divide these things quite as neatly as that. She – I don't know if I'm paraphrasing correctly, but what I heard her say is that when they go out and promulgate the rules that are designed specifically to affect the adjudication of this case, they step out of their role of being judicial officers, not merely as to the rules themselves, but vis-a-vis her client. And they're really not being judicial officers there because they are targeting your client for a – for legislative action, that is, when it precludes his successful petition – adjudication in his case. Those things happen chronologically or sequentially. That is, the board first makes rules. It first acts legislatively. Let's take Judge Fisher's hypothetical. This is a very good one. Let's say a judge has a case pending, and he knows the case is about to – I don't know, somebody's – you know, it's about to come to a decision. And so he heads down to the – what is it, Salem here? Salem. Right, the state legislature, and says, hey, it would be very nice if you passed this amendment to this particular statute because it would really make my job a lot easier in this case because I could rule against the plaintiff. Do you agree that at that point the judge, when he's heading down to the legislature and asking that, is acting outside of his judicial role? Yes, I think so. And when he then goes back, and having been successful because, you know, he's a judge because he knows lots of people in Salem, well, you know, let's just presume. And so he has a lot of gravitas, and people say, okay, yes, Your Honor, we'll do that. And then he goes back and applies this new rule to the plaintiff's case. Has he stepped back into his judicial role, or is he at that point still just a lobbyist? I think he's back to being a judge at that point. You believe so? I believe that ultimately that decision – Do you see the argument where he might not be? I do. At that point, having sort of acted to change the law applicable to the case, he can't go back to being a judge of the case. I understand that that argument could be made. I don't agree with it. I think that at some point the rulemaking function ends, or in the hypothetical, the legislative decision ends, the legislative function ends, the law has been made, and now it is up to a judge. The expectation would be that the judge would take that law and apply it to a particular set of facts and render a decision about a particular person. You think that the judge might want to recuse himself? You would think so, and those very well might be arguments that could be made on an appeal or on a habeas petition. I mean, there may be any number of complaints about why that would be improper for the judge to act at that point, but I don't think it would change the judge's function at that point. He would be operating as a judicial officer, maybe unconstitutionally, maybe unethically, maybe illegally in some way, but he would be operating at that point in a judicial capacity. And what the legislature has told us is that to the extent he's operating in a judicial capacity, he's immune from suit under this particular type of lawsuit. There may be direct appeal, habeas, any number of ways to go after that decision, but a 1983 tort suit is not one of them. So turning back, I guess, to the actual complaints in this case, I think it's important and really necessary in addressing that claim to characterize precisely what plaintiff has alleged actually happened. And that's why I'm focusing sort of on the sequential aspect of this, that there is a chronology here, that the board in 1998, 1999 is writing these rules. They have an advisory committee together, and they're putting these rules together. At some point in that process, the board has developed proposed rules. And this is per plaintiff's complaint. At some point, they've developed proposed rules. And up until that point, plaintiff hasn't alleged that anything unconstitutional has occurred. Obviously, the board knows who these five offenders are, who the rules will apply to by that point. Everyone knows who these five offenders are. The reason that we are even in the position of writing rules at this point is because these five offenders do not have any other rules to apply to them. And plaintiff, I don't understand, to have even alleged that anything up until the point of writing the proposed rules, that the board has done anything unlawful or at least not unconstitutional, not a violation of due process. The allegation is that then once the board has developed those proposed rules, they review plaintiff's file. They take plaintiff's file, look at the proposed rules, and see how his case will be determined under those proposed rules. And that that is an allegation that the board has essentially prejudged his case. I thought there was a little bit more than this, that they made, that they tweaked the proposed rules. I understand the allegation to be that they tweaked the rules with respect to another one of the offenders. I can't remember his first name. Last name is Cuneo. He's named in the complaint. I don't see anything in the complaint that alleges at least that the rules were tweaked in any way relevant to Mr. Sofer. I do, I think that, I think you're correct that there's an allegation that after that point there still was some rulemaking that went on, but not as it pertains to Mr. Sofer or any decision that was ever rendered in his case. That's why I say that my understanding of and characterization of Mr. Sofer's claim is that really what the complaint is, is that once the proposed rules had been developed, the board prejudged his case, looked at his case, applied these proposed rules to him, and made a decision long before holding a hearing. Can there be a claim under 983 simply for the amendment of the rules? Can this Petitioner bring that claim? Can he bring a claim? That the rules were improperly amended as to him? If he alleged facts sufficient to prove, sufficient to state such a claim, I arguably yes. For example, he has an ex post facto claim. He does. So it's easy to assume. Sure. That claim is properly presented. An ex post facto claim in a 1983? Yes. I mean, do you just mean generally could he raise an ex post facto claim in 1983? There may be other bars to doing so. That may be a claim that should be in habeas. I'm sorry. I don't know if you can see the claim here or anything else. I'm just talking about the 96 amendments. Oh, the 1996 amendments, yes. And questions of standing and, you know. I understand. You might have other defenses. Sure. I'm not trying to lock you into anything else. I'm saying as far as the 96 amendments are concerned, just plain standing, is there some reason he can't challenge the rules themselves on, let's say, ex post facto? We're assuming that he could otherwise state a claim for relief based on some rulemaking function. And our position would be that that isn't the way that the claim reads right now. But assuming he could state a claim for relief based on the rulemaking function, the 1996 amendment to the statute would not, I don't believe, provide immunity to the Board in that circumstance. That would be an allegation that the Board would. How would an eighth amendment claim? I think that might depend on how the claim was phrased. I'm not asking you whether it would be a good claim or a successful claim. And if it was direct – if the claim was phrased as directed to suggest that the punishing someone unlawfully if the Board wrote rules that said the person will be tortured. Well, I mean, let's say they did say a person would be tortured, but they didn't have anybody specific in mind. Sure. But they said anybody who sort of fits this sort of criteria will not only, you know, spend X number of months in prison, but will be tortured once a week. That claim could be challenged. I mean, that set of regulations could be challenged on eighth amendment grounds without actually having to undergo the torture or, you know, to get to the point. So long as somebody to whom the regulations might apply. As far as the 1996 judicial immunity amendments are concerned, I agree. The 1996 amendments wouldn't apply. I'm asking about the 1996 amendments, but I'm also sort of asking a question of standing. You know, you can't sort of challenge any rule at all. Sure. And that, I think, does pose a problem in this case. And I see my red light's about to go on, so. That's okay. There is a general standing issue here that really there is no constitutional injury to plaintiff until the rule has been applied to him in some way or until a decision has been made in his case that's directed at him. So there very well might be one of these standing problems. And that's why I say sort of assuming that plaintiff could state such a claim. But, see, this is why I'm trying to back you on the 1996 amendments. Because the only – if you take that position, which you do, then the only way he can really state a concrete claim is by having them do something as to which they have immunity under the 1996 amendments. So can there ever be standing when the triggering event itself is an immune event? When the triggering event itself is an immune event. According to your position. I'm not sure that you are right about this. But you're saying, look, when they apply it to him, then he has standing to challenge the rules. But the thing that, in your view, triggers his ability to challenge the rules. Is judicial function. So let me rephrase, I guess. When they apply the rules to him, they can challenge that decision. That individual decision to apply the rules to him, that decision would be protected by judicial immunity. But he couldn't sue them individually, but he could challenge. Is there a way for him to challenge the decision up through the Oregon courts? In this case, and this is one of the things that has led to a lot of litigation with these particular five inmates, is that the legislature had not provided a mechanism for judicial review of this particular order, of these particular orders. These five offenders received what the board calls a review date. And the legislature provided that review dates aren't reviewable in the Oregon appellate courts. So there was a number of years we've spent litigating whether or not that could be challenged on direct judicial review. And that's why we've wound that back into these mandamus cases, because we've determined now that judicial review is not the appropriate forum, but that mandamus is. So that essentially the way the legislature has structured Oregon's ability for an inmate to challenge this kind of decision, mandamus is the only available remedy. And that's a little bit of a tangent. Where does that stand? Excuse me? Where does that stand in the state court? Have the state court bought off on that? We have filed a brief in Mr. Sofer's mandamus case, which was attached to our brief in this case, where we've conceded that his case could go forward in mandamus. Right. But a concession on the party's part is not binding on the court. I understand. Especially on a jurisdictional matter. And the so the the this was in the court of appeals, right? Oregon court of appeals, yes. Right. And that court has not ruled, and so we don't know whether they will accept the concession. We don't know yet whether, yeah. The Oregon supreme court will. Accept the concession as well. There would be a petition for review. I don't imagine anyone would petition for review if the court of appeals were to. But at least theoretically there is a. Theoretically, yes. There is a petition for review. And also state courts would have to accept the state's concession. Yes. It would be. Where we are in that process right now is. It would be wise for us to hold off until we hear what the Oregon courts do with your. It may very well be wise to wait and see what the Oregon courts say about those mandamus cases. It would be wise to do the wise thing here. And I believe that would be wise. I don't know that anything would prohibit the court from doing so. Where we are in the. What's the timing? Where we are in the process is we filed the concession brief earlier in the year. It was submitted on the briefs to the court of appeals in September of this year. So it's been pending in front of the Oregon court of appeals for about two months. As you know, it is unpredictable at best how long it will take. Oregon does not have a rule like California, a 90-day rule. No. We don't have any rule that requires our court of appeals to issue their decision in any particular time frame. And so it really, unfortunately, is unpredictable. And even if there is a rule. I'm sorry. Even if there is a favorable ruling for the court of appeals, or at least a theoretical possibility, although I guess nobody would petition. Nobody would petition, yes. You would have 35 days, I believe it is, to file a petition for review. No one would file a petition because no one would. There isn't anybody else out there who could come in and. . . Not to challenge that decision. It would either be. . . Parole board? Represent the parole board. Our office represents the state and any state actor. So right now I represent. . . In this case, we represent particular named defendants. It's not like the governor or the attorney general or somebody come in and say, parole board is all wet, we want to come in and. . . Well, our office is the attorney general's office. We have. . . So we're the attorney general's office. And all I can say is that our office has, in what you can imagine, were fun meetings for all of us, talked about these cases, tried to decide what the right answer was, and we have decided to make the decision to concede error in the Mandamus case and accept that that case could go back to here. But you're not pretending to us. This is basically you speak for Oregon. I can speak for the attorney general's office at this point, yes, that we have conceded that that case needs to go back to the parole board. So if we get an answer from the Oregon Court of Appeals. . . That's the end of it. 99% or better that that would be the end of it. When you get an answer from the Court of Appeals, the absolute safest way to go would be to wait 35 days before we know that there's no petition for review in the Supreme Court, and at that point you can rest assured that our office will be allowing this case to go back on the merits to the circuit court where we have no intention and no knowledge even of any further impediments to reaching the merits of this claim. Now, we will, I anticipate, raise merits arguments. We're not conceding that his argument is correct. We may move to dismiss for failure to state a claim, but I believe that would get at the merits of his claim. That would allow a court to hear whether or not he has stated a claim for due process of the due process violation. And so that's our position essentially, is that when this goes back to the circuit court, plaintiff will have an opportunity to have the merits of his due process allegations heard. And I see I'm quite a bit over time. I apologize for taking too much. Unless the Court has further questions. Thank you. And rest on the briefs the rest of the way. Thank you. Ms. Hellman, did I more or less phrase your argument, understand your argument correctly? Could you? Or the interaction between the legislative process and the judicial? Yes, Your Honor, more or less. What I would like to point out in rebuttal are a few things. First of all, that the distinction between writing these proposed rules and then making these decisions is not nearly as clear and clean as defendants would like to make it. It was much more of a combined process. There was not a neutral decision about rules and then sometime later a look at potentially what would happen with these rules. The rules were, as we alleged, designed to allow them to reach the outcomes that they thought were correct for these five juveniles. When you implement something that you ---- What does that bar you? To me it just says maybe even the legislative rules are covered by 96 amendments because you're not telling me they're not really legislative. They're really adjudicated. And what that lands you is inside the 96 amendments. And maybe that means that the legislative enactment of the rules isn't exemptive because it's part of the adjudication. Maybe it's a bad part of the adjudication, but it's an adjudication. It's ---- Defendants' actions were not adjudicative in this case. The Supreme Court has used words like neutral, detached, and impartial to refer to an adjudicative function. And a targeted predetermination is more like a legislative function or potentially even approaching a bill of attainder rather than a neutral judge sitting and hearing ---- getting evidence and hearing a case. So to the extent that in their rulemaking process, the defendants were not acting in a judicial capacity. Judicial immunity, which by the way is the only defense that defendants raised, was judicial immunity does not apply. I would also just want to respond very quickly to the idea that the concession is that Mr. Sofer's claims can be heard on the merits. And to the extent that this Court has discussed the idea of whether a stay should issue in this case, I would urge that the stay issue through the remand should it happen from the Oregon courts to see what other defenses are going to be raised against his claims. As I read this footnote, it is not identical to what counsel has represented to this Court. This footnote appears to me to reserve significantly more leeway than a full concession for the merits. So if a stay is what you're considering, I would urge the stay to be very specific. And finally, I would say that should there be ---- I'm not exactly sure I understand what you're saying. What I have asked is whether we should stay our decision, delay ruling on the case, until we hear what the Oregon Court of Appeals has to say on the concession. And you're saying something else? Yes. I don't think you, this panel, the Ninth Circuit, Your Honor, should stay the resolution. It's my position that we're right on our arguments that we should be remanded to the district court for litigation on the merits. At that point, should the district court wish to enter a stay, we could discuss the merits of that, the scope of that stay, excuse me. But, no, staying the ruling in this case now, I think ---- Well, there is a ---- the problem is that there is a younger issue here that was legitimately raised, and the district court bought it. Correct. And we've ---- And so wouldn't it be prudent for us to wait to see what the state court of appeals does? Yes, but my position would be that it would also be just as prudent for the district court to be in the first position to be able to reevaluate. The district court did not even consider in its order whether it would or would not grant a stay. It merely dismissed. And so it would be prudent for the district court to have that opportunity in the first place. But I'm not understanding what you want us to do. So let's just walk through it step by step so we ---- I just want to understand your position. You agree, I take it, with opposing counsel that it would be prudent for us. I'm not going to tell you that's what I'm going to do. But I don't know what you would prefer. But you agree that it would be prudent for us to not do anything, at least up to the time we hear what the court of appeals rules in this ---- on this concession. No. I think you should send this case back to the district court for litigation on the merits, because under clear precedent, Mr. Soford does not have the opportunity required under Younger. And if all of the other elements of Younger are met, there are exceptional circumstances in this case that would prohibit Younger's application. That's my first position. If that's rejected, rather than an outright dismissal, we ask the court to stay pending the resolution of the mandamus case. So that's a secondary ---- that would be the secondary position. If we lose the first position ---- Stay what? Stay the appeal? Stay ---- Stay what? Rather than a dismissal, we asked either for leave to amend or for a stay. So I would ask you ---- We don't dismiss. We affirm, reverse, or remand. Those are the options. I would like a remand, Your Honor. And then I would like with ---- either with instructions to the district court to allow merits litigation or with instructions to the district court to allow to stay the case. I think they understand. I'd like to compliment counsel. It's a very good argument. It's really a very thoughtful argument from both sides. Much appreciated. The case is now used and submitted. We are adjourned.
judges: Kozinski, Fisher, Paez